## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 19-cr-794** |
| | § | |
| **JAMES D. DANNENBAUM** | § | |

## PLEA AGREEMENT

The United States of America, by and through Tim S. Braley, Attorney for the United States, Carolyn Ferko and John Pearson, Assistant United States Attorneys; Corey R. Amundson, Chief, Public Integrity Section of the Criminal Division of the United States Department of Justice, and Jessica C. Harvey, Trial Attorney; and James D. Dannenbaum, acting for himself and through his counsel, David Gerger, Esq., Richard Deutsch, Esq., and Larry D. Eastepp, Esq., pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.      Defendant agrees to plead guilty to Count One of the Information. Count One charges the Defendant with Making Contributions in the Names of Others, in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(D)(i) and Title 18, United States Code, Section 2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment

1

either charged in the Information or proven to a jury or judge beyond a reasonable doubt. Defendant knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the instant Plea Agreement and Information and consents to the filing of the Information in the United States District Court for the Southern District of Texas.

### Punishment Range

2.     The **statutory** maximum penalty for this violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(D)(i) and Title 18, United States Code, Section 2, is a term of imprisonment of not more than two (2) years and a fine of not less than 300 percent of the amount involved in the violation and not more than the greater of $50,000 or 1,000 percent of the amount involved in the violation. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than one year. Title 18, United States Code, §§ 3559(a) and 3583(b). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, §§ 3559(a) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

2

**Mandatory Special Assessment**

3.      Pursuant to Title 18, United States Code, § 3013(a)(2)(A), immediately

after sentencing, Defendant will pay to the Clerk of the United States District Court a

special assessment in the amount of one hundred dollars ($100.00) per count of

conviction. The payment will be by cashier's check or money order payable to the

Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010,

Houston, Texas  77208, Attention: Finance.

**The United States' Agreements**

4.      The United States agrees to each of the following:

(a)      At the time of sentencing, the United States agrees not to oppose
Defendant's anticipated request to the Court and the United States
Probation Office that he receive a two (2)-level downward adjustment
under § 3E1.1(a) of the Sentencing Guidelines should Defendant accept
responsibility as contemplated by the Sentencing Guidelines (U.S.S.G.);
and

(b)      If Defendant qualifies for an adjustment under U.S.S.G.
§ 3E1.1(a) and Defendant's offense level is 16 or greater, the United
States may move for an additional one (1)-level downward adjustment
based on the timeliness of the plea or the expeditious manner in which
Defendant provided complete information regarding his role in the
offense.

(c)      The Government agrees that it will not seek restitution or forfeiture
of any property in conjunction with the offenses charged in the
Information.

3

**Agreement Binding - Southern District of Texas and Criminal Division Only**

5.     The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Information. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas, the Criminal Division of the U.S. Department of Justice, and Defendant. It does not bind any other United States Attorney or component of the Department of Justice. The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

**United States' Non-Waiver of Appeal**

6.     The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines.  Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

4

**Sentence Determination**

7.      Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the discretion of the sentencing judge.  If the Court should impose any sentence up   to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement. The Government agrees that for purposes of this Plea Agreement and subsequent sentencing calculations, the aggregate value of Defendant's illegal transactions in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(D) is $323,300 during calendar years 2015, 2016, and 2017.

## Rights at Trial

8.      Defendant represents to the Court that he is satisfied that his attorneys have rendered effective assistance. Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

    (a)      If the Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

    (b)      At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

    (c)      At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

9.      Defendant is pleading guilty because he _is_ guilty of the charges contained in Count One of the Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

(a.) Dannenbaum Engineering Corporation ("DEC") was a privately owned civil engineering firm headquartered in Houston, Texas, within the Southern District of Texas, and with satellite locations in Austin, Dallas, El Paso, Ft. Worth, San Antonio, Laredo, and McAllen. Engineering Holding Corporation (EHC) was the parent company of DEC.

(b.) James D. Dannenbaum (hereinafter "Defendant") was a resident of Houston, Texas, located in the Southern District of Texas. The Defendant was the largest individual shareholder of EHC and DEC, as well as President and Chief Executive Officer of DEC.

(c.) Former Employee A was a resident of McAllen, Texas, within the Southern District of Texas. Former Employee A served as the lead project manager on most of DEC's South Texas work.

(d.) From in and about 2015 through in and about 2017, the Company, Defendant, and Former Employee A knowingly and willfully made contributions to candidates for federal office in the names of other persons, aggregating $25,000 and more during a calendar year. Defendant and Former Employee A directly and indirectly solicited DEC employees and their family members for contributions to various federal candidates and their committees, with the understanding that the DEC, the Defendant, Former Employee A, and others would provide the funds for the contributions or would reimburse the conduit donors in full, including by causing

7

funds to be disbursed from DEC as an advance or a reimbursement for the conduits'
contributions. In addition, Defendant routinely directed funds from DEC to his own
account to reimburse himself for his own advances or reimbursements to such
conduits.

(e.)    The contributions are detailed below:

| Year | Conduits | Total Contributed | Campaigns & Committees | Contributions |
|------|----------|-------------------|------------------------|---------------|
| 2015 | 15 | $170,800 | 8 | 42 |
| 2016 | 26 | $130,000 | 15 | 44 |
| 2017 | 4 | $22,500 | 3 | 9 |

(f.) In 2015, Defendant, Former Employee A, and DEC caused approximately fifteen DEC employees and their family members to contribute in their own names to various federal campaigns, and political action committees that conducted activities in connection with a federal election. In the aggregate, the conduits made approximately forty-two contributions, totaling $170,800, to approximately eight federal campaigns and political action committees. Each of these contributions was reimbursed by Defendant with corporate funds. Neither Defendant, Former Employee A, nor DEC revealed to the candidates or to the committees that the company was the true source of these funds.

(g.) In 2016, Defendant, Former Employee A, and DEC caused approximately twenty-six DEC employees and their family members to contribute in their own names to various federal campaigns, and political action committees that conducted activities in connection with a federal election. In the aggregate, the conduits made approximately forty-four contributions, totaling $130,000, to approximately fifteen federal campaigns and political action committees. Each of these contributions was reimbursed by Defendant with corporate funds. Defendant did not reveal to the candidates or to the committees that he was the true source of these funds.

(h.) In 2017, Defendant, Former Employee A, and DEC caused approximately four of Defendant's employees and their family members to contribute in their own names to various federal campaigns and political action committees that conducted

activities in connection with a federal election. In the aggregate, the conduits made approximately nine contributions, totaling $22,500, to approximately three federal campaigns, and political action committees. Each of these contributions was reimbursed by Defendant with corporate funds. Defendant did not reveal to the candidates or to the committees that he was the true source of these funds.

(i.) "Committee A" was an independent expenditure-only political committee, or "Super PAC," that received contributions made for the purpose of influencing elections for federal office, including for the office of President of the United States. In or about 2015, Defendant solicited Former Employee A and other DEC employees to contribute to Committee A, representing that he would reimburse them in full for their contributions. In or about 2015, at Defendant's solicitation and direction, Former Employee A and eight other DEC employees and their family members each contributed to Committee A in their own names, for a total of $90,000. Defendant and Former Employee A reimbursed each contributor using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee A that DEC was the true source of these funds.

(j.) "Candidate B" was a candidate for the office of President of the United States. "Committee B" was Candidate B's principal campaign committee. In or about 2015, Defendant solicited Former Employee A and other DEC employees to contribute to Committee B, representing that he would reimburse them in full for

their contributions. In or about 2015, at Defendant's solicitation and direction, Former Employee A and ten other DEC employees and their family members each contributed to Committee B in their own names, for a total of $48,600. Defendant reimbursed each contributor using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee B that DEC was the true source of these funds. Additionally, in or about 2016, Defendant solicited DEC employees to contribute to Committee B, representing that he would reimburse them in full for their contributions. In or about 2016, at Defendant's solicitation and direction, eight DEC employees and their family members each contributed to Committee B in their own names, for a total of $21,600. Defendant reimbursed the contributors for their contributions using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee B that DEC was the true source of these funds.

(k.) "Candidate C" was a candidate for the office of United States Senator. "Committee C" was Candidate C's principal campaign committee. In or about 2015, Defendant solicited DEC employees to contribute to Committee C, representing that he would reimburse them in full for their contributions. In or about 2015, at Defendant's solicitation and direction, four DEC employees and their family members each contributed to Committee C in their own names, for a total of $10,800. Defendant reimbursed each contributor using funds derived from the corporate bank

account of DEC. Defendant did not reveal to Committee C that DEC was the true source of these funds.

(l.) "Candidate D" was a candidate for the United States House of Representatives. "Committee D" was Candidate D's principal campaign committee. In or about 2015, Defendant solicited DEC employees to contribute to Committee D, representing that he would reimburse them in full for their contributions. In or about 2015, at Defendant's solicitation and direction, three DEC employees and their family members each contributed to Committee D in their own names, for a total of $8,100. Defendant reimbursed each contributor using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee D that DEC was the true source of these funds. In addition, in or about 2016, Defendant solicited DEC employees to contribute to Committee D, representing that he would reimburse them in full for their contributions. In or about 2016, at Defendant's solicitation and direction, one employee of DEC contributed to Committee D in his or her own name, for a total of $2,700. Defendant reimbursed the contributor using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee D that DEC was the true source of these funds.

(m.) "Candidate E," referred to elsewhere as "Candidate #3-2017," was a candidate for the United States House of Representatives. "Committee E," referred to elsewhere as "Committee #3-2017," was Candidate E's principal campaign

committee. In or about 2015, Former Employee A contributed to Committee E in his or her own name, for a total of $4,200. Defendant reimbursed Former Employee A using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee E that DEC was the true source of these funds. In or about 2017, Former Employee A contributed to Committee E in his or her name, for a total of $2,500. Defendant reimbursed Former Employee A using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee E that DEC was the true source of these funds.

(n.) "Candidate F" was a candidate for the United States House of Representatives. "Committee F" was Candidate F's principal campaign committee. In or about 2015, Former Employee A contributed to Committee F in his or her own name, for a total of $3,700. Defendant reimbursed Former Employee A using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee F that DEC was the true source of these funds.

(o.) "Candidate G" was a candidate for the office of President of the United States. "Committee G" was Candidate G's principal campaign committee. In or about 2015, Former Employee A contributed to Committee G in his or her own name, for a total of $2,700. Defendant reimbursed Former Employee A using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee G that DEC was the true source of these funds. In addition, in or about 2016, Defendant

and Former Employee A solicited DEC employees to contribute to Committee G, representing that Defendant would reimburse them in full for their contributions. In or about 2016, at Defendant's and Former Employee A's solicitation and direction, Former Employee A and nine other DEC employees and their family members each contributed to Committee G in their own names, for a total of $27,000. Defendant and Former Employee A reimbursed the contributors for their contributions using funds derived from the corporate bank account of DEC. Defendant and Former Employee A did not reveal to Committee G that DEC was the true source of these funds.

(p.) "Candidate H" was a candidate for the office of United States Senator. "Committee H" was Candidate H's principal campaign committee. In or about 2015, Defendant solicited DEC employees to contribute to Committee H, representing that he would reimburse them in full for their contributions. In or about 2015, at Defendant's solicitation and direction, one employee contributed to Committee H in his or her own name, for a total of $2,700. Defendant reimbursed the contributor using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee H that DEC was the true source of these funds.

(q.) "Candidate I" was a candidate for the United States House of Representatives. "Committee I" was a joint fundraising committee of Candidate I. In or about 2016, Defendant solicited DEC employees to contribute to Committee I,

representing that he would reimburse them in full for their contributions. In or about 2016, at Defendant's solicitation and direction, five DEC employees and their family members each contributed to Committee I in their own names, for a total of $25,000. Defendant reimbursed the contributors for their contributions using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee I that DEC was the true source of these funds.

(r.) "Candidate J" was a candidate for the United States House of Representatives. "Committee J" was Candidate J's principal campaign committee. In or about 2016, Defendant solicited DEC employees to contribute to Committee J, representing that he would reimburse them in full for their contributions. In or about 2016, at Defendant's solicitation and direction, four DEC employees and their family members each contributed to Committee J in their own names, for a total of $10,800. Defendant reimbursed the contributors for their contributions using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee J that DEC was the true source of these funds.

(s.) "Candidate K" was a candidate for the United States House of Representatives. "Committee K" was Candidate K's principal campaign committee. In or about 2016, Defendant solicited DEC employees to contribute to Committee K, representing that he would reimburse them in full for their contributions. In or about 2016, at Defendant's solicitation and direction, four DEC employees and their

family members each contributed to Committee K in their own names, for a total of $10,800. Defendant reimbursed the contributors for their contributions using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee K that DEC was the true source of these funds.

(t.) "Candidate L" was a candidate for the United States House of Representatives. "Committee L" was Candidate L's principal campaign committee. In or about 2016, Defendant solicited DEC employees to contribute to Committee L, representing that he would reimburse them in full for their contributions. In or about 2016, at Defendant's solicitation and direction, two DEC employees and their family members each contributed to Committee L in their own names, for a total of $5,400. Defendant reimbursed the contributors for their contributions using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee L that DEC was the true source of these funds.

(u.) "Candidate M" was a candidate for the United States House of Representatives. "Committee M" was Candidate M's principal campaign committee. In or about 2016, Defendant solicited DEC employees to contribute to Committee M, representing that he would reimburse them in full for their contributions. In or about 2016, at Defendant's solicitation and direction, two DEC employees and their family members each contributed to Committee M in their own names, for a total of $5,400. Defendant reimbursed the contributors for their contributions using funds

derived from the corporate bank account of DEC. Defendant did not reveal to Committee M that DEC was the true source of these funds.

(v.) "Candidate N" was a candidate for the United States House of Representatives. "Committee N" was Candidate N's principal campaign committee. In or about 2016, at Defendant and Former Employee A's solicitation and direction, Former Employee A and one other DEC employee each contributed to Committee N in their own names, for a total of $5,200. Defendant reimbursed the contributors using funds derived from the corporate bank account of DEC. Defendant and Former Employee A did not reveal to Committee N that DEC was the true source of these funds.

(w.) "Committee O" was an independent expenditure-only political committee, or "Super PAC," that received contributions made for the purpose of influencing elections for federal office. In or about 2016, at Former Employee A's solicitation and direction, one employee of DEC contributed to Committee O in his or her own name, for a total of $5,000. Defendant reimbursed the contributor using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee O that DEC was the true source of these funds.

(x.) "Candidate P" was a candidate for the United States House of Representatives. "Committee P" was Candidate P's principal campaign committee. In or about 2016, Defendant solicited DEC employees to contribute to Committee P,

representing that he would reimburse them in full for their contributions. In or about 2016, at Defendant's solicitation and direction, one employee of DEC contributed to Committee P in his or her own name, for a total of $2,700. Defendant reimbursed the contributor for using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee P that DEC was the true source of these funds.

(y.) "Candidate Q" was a candidate for the United States House of Representatives. "Committee Q" was Candidate Q's principal campaign committee. In or about 2016, Former Employee A contributed to Committee Q in his or her own name, for a total of $2,700. Defendant reimbursed Former Employee A using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee Q that DEC was the true source of these funds.

(z.) "Candidate R" was a candidate for the office of President of the United States. "Committee R" was Candidate R's principal campaign committee. In or about 2016, Defendant solicited DEC employees to contribute to Committee R, representing that he would reimburse them in full for their contributions. In or about 2016, at Defendant's solicitation and direction, one employee of DEC contributed to Committee R in his or her own name, for a total of $2,700. Defendant reimbursed the contributor using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee R that DEC was the true source of these funds.

(aa.) "Committee S" was a qualified political action committee that received contributions made for the purpose of influencing elections for federal office. In or about 2016, Former Employee A contributed to Committee S in his or her own name, for a total of $2,000. Defendant reimbursed Former Employee A using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee S that DEC was the true source of these funds.

(bb.) "Candidate T" was a candidate for the office of United States Senator. "Committee T" was Candidate T's principal campaign committee. In or about 2016, Former Employee A contributed to Committee T in his or her own name, for a total of $1,000. Defendant reimbursed Former Employee A using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee T that DEC was the true source of these funds.

(cc.) "Candidate U," referred to elsewhere as "Candidate #1-2017," was a candidate for the United States House of Representatives. "Committee U," referred to elsewhere as "Committee #1-2017," was Candidate #U's principal campaign committee. In or about 2017, Defendant and Former Employee A solicited DEC employees to contribute to Committee U, representing that Defendant would reimburse them in full for their contributions. In or about 2017, at Defendant's and Former Employee A's solicitation and direction, Former Employee A and three other employees of DEC contributed to Committee U in their own names, for a total of

$10,000. Defendant reimbursed each contributor using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee U that DEC was the true source of these funds.

(dd.) "Candidate V," referred to elsewhere as "Candidate #2-2017," was a candidate for the office of United States Senator. "Committee V," referred to elsewhere as "Committee #2-2017," was Candidate V's principal campaign committee. In or about 2017, Defendant and Former Employee A solicited DEC employees to contribute to Committee V, representing that Defendant would reimburse them in full for their contributions. In or about 2017, at Defendant's and Former Employee A's solicitation and direction, Former Employee A and three other employees of DEC contributed to Committee V in their own names, for a total of $10,000. Defendant reimbursed each contributor using funds derived from the corporate bank account of DEC. Defendant did not reveal to Committee V that DEC was the true source of these funds.

(ee.) On February 14, 2017, Defendant and Former Employee A discussed their plan to use corporate funds to contribute a total of $10,000 to the reelection campaign of Candidate U, that is, Candidate #1-2017, and a total of $10,000 to the reelection campaign of Candidate V, that is, Candidate #2-2017. During the conversation, Dannenbaum directed Former Employee A, "For the federal, you know you'll have to split it up." Former Employee A replied, "Yeah, I was gonna

make sure I get it split up right." Defendant replied, "Yeah-I-I normally have all the checks together and then staple, you know, my business card . . . to the checks so that-so there's no confusion about . . . where they came from."

(ff.) In or about February 2017, Defendant submitted a "Check Request Form" to DEC's finance office, directing that a $21,000 payment be issued to Former Employee A. On the form, Defendant indicated that the check was to be a payment for a "Marketing Advance."

(gg.) Shortly thereafter, Defendant caused Former Employee A to receive a DEC corporate check in the amount of $21,000 with the abbreviation "MKT ADV" noted on the check stub. After receiving this corporate check, Former Employee A, in turn, wrote three personal checks to three DEC employees. The amount of these checks mirrored the total amount that each DEC employee contributed to the campaigns identified by Dannenbaum and Former Employee A. FEC records show that Former Employee A and the three DEC employees' February 2017 campaign contributions totaled $10,000 to each of the two campaigns.

(hh.) After the FBI conducted search warrants at multiple DEC locations in April 2017, and after the FBI interviewed an employee from the external audit and accounting firm hired by EHC and DEC to prepare its tax returns, these individuals began to prepare EHC's draft 2016 corporate tax return. In November and December 2017, these individuals interviewed Defendant regarding whether DEC had made

any politically related payments. The external audit and accounting team also asked DEC via a written questionnaire, "Did the company pay or incur any amount, either directly or indirectly, related to participation in, or intervention in, any political campaign on behalf of (or in opposition to) any candidate for public office?" Defendant willfully and falsely responded, "No."

(ii.) At the time he executed the charged conduit contribution scheme, Defendant knew that it was unlawful under federal law to make contributions in the names of others.

### Breach of Plea Agreement

10.    If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines

11.     This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

12.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) by the deadline set by the United States, or if no deadline is set, prior to sentencing. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

13.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such

23

transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

14.    Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

15.    If restitution is an issue, Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

16.    Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

## Fines

17.    Defendant understands that the Federal Election Campaign Act of 1971, as amended, Title 52 U.S.C. §§ 30101, *et seq.*, requires the Court to impose a fine, and that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any

imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of Paragraph 6 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Wiring of Plea Agreement

18.     Defendant understands and acknowledges that this Plea Agreement and any plea of guilty which Defendant may enter pursuant to this Plea Agreement are contingent upon the entry of a Deferred Prosecution Agreement between the United States and Defendants Dannenbaum Engineering Corporation and Engineering Holding Corporation. If the Deferred Prosecution Agreement is not entered, this Plea Agreement and any proceedings pursuant to this Plea Agreement shall be withdrawn or voided at the sole discretion of the United States.

### Complete Agreement

19.     This written Plea Agreement, consisting of 29 pages, including the attached addendum of Defendant and his attorney, constitutes the complete Plea Agreement between the United States, Defendant, and his counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

20.    The defendant further agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the Hyde Amendment, Section 617, P .L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

21.    Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at _____Houston_____, Texas, on _December 6_, 2019.


_____
JAMES D. DANNENBAUM
Defendant

Subscribed and sworn to before me on_____December 6_____,
2019.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By:            Deputy United States District Clerk


_____Andrew Bryd, Deputy Clerk_____

26

APPROVED:

**COREY R. AMUNDSON**
Chief, Public Integrity Section
Criminal Division
United States Department of Justice

**TIM S. BRALEY**
Attorney for the United States
United States Attorney's Office
Southern District of Texas

BY:
_____
Jessica C. Harvey
Trial Attorney

_____
Carolyn Ferko
John Pearson
Assistant United States Attorneys

_____
DAVID GERGER
Attorney for Defendant

_____
RICHARD DEUTSCH
Attorney for Defendant

_____
LARRY D. EASTEPP
Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 19-cr-** |
| | § | |
| | § | |
| **JAMES D. DANNENBAUM** | § | |

### PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his rights with respect to the pending

Indictment. I have reviewed the provisions of the United States Sentencing

Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and

carefully explained to Defendant the provisions of those Guidelines which may

apply in this case. I have also explained to Defendant that the Sentencing Guidelines

are only advisory and the court may sentence Defendant up to the maximum allowed

by statute per count of conviction. Further, I have carefully reviewed every part of

this Plea Agreement with Defendant. To my knowledge, Defendant's decision to

enter into this Agreement is an informed and voluntary one.

_____          12/6/19
Attorney for Defendant            Date

28

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.   My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case.  I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms.

_____          _____
JAMES D. DANNENBAUM                          Date   12/6/19